**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| **ROBERT MILLION**, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>**CONSUMER SAFETY TECHNOLOGY, LLC d/b/a INTOXALOCK**,<br><br>Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Robert Million ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action against Consumer Safety Technology, LLC d/b/a Intoxalock ("Defendant"), by and through his undersigned counsel. Plaintiff makes the following allegations upon information and belief based on and the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## I.    INTRODUCTION

1.    Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons impacted by a cyberattack on Defendant IT Network (the "Breach").

2.    Plaintiff's claims arise from Defendant's failure to properly secure its IT Network and failure to implement reasonable cybersecurity measures—such as encryption, multi-factor authentication, or timely software patches—which allowed unauthorized third parties to cause service disruptions to Plaintiff and Class Members.

3.    Defendant is a provider of ignition interlock devices ("IIDs") or car breathalyzers, helping individuals with DUI/OWI convictions resume driving safely.[1] Defendant's devices

---

[1] https://www.intoxalock.com/about#:~:text=About%20Intoxalock,used%20in%20all%2050%20states. (last visited July 24, 2026).

measure breath alcohol concentration ("BrAC") and prevent cars from starting if a driver has been drinking, meeting state requirements in 46 states with over 100,000 users.[2]

4.    On March 14, 2026, Defendant experienced a Breach.[3] As a result of the Breach, installations, calibrations, account access, and other court-ordered services of Defendant were disrupted.[4] This has resulted in many customers, including Plaintiff and Class Members, from being able to provide a negative alcohol breath sample in order start their vehicles.[5]

5.    Defendant failed to take precautions designed to keep its IT Network secure from unauthorized intrusion.

6.    Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep its IT Network safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from having Plaintiff and Class Members as customers, yet breached its duty by failing to implement or maintain adequate security practices.

7.    Defendant admits that its IT Network was accessed by unauthorized individuals, though it provided little information regarding how the Breach occurred.

8.    Defendant failed to use reasonable security procedures and practice appropriate to protect Plaintiff and Class Members, resulting in harm to Plaintiffs and Class Members.

9.    What is extraordinarily troubling about the Breach is that even though Defendant knew how valuable customer information is, Defendant failed to adequately protect Plaintiff's and Class Members' Personal Identifiable Information ("Private Information"). This Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect customers' sensitive data. An unauthorized third-party targeted and obtained Plaintiff's and Class Members' Private Information because of its value in exploiting and

---

[2] *Id.*

[3] https://techcrunch.com/2026/03/20/cyberattack-on-vehicle-breathalyzer-company-leaves-drivers-stranded-across-the-us/ (last visited July 24, 2026).

[4] https://cybernews.com/news/intoxalock-hack-breathalyzer-devices-cars-wont-start-us/ (last visited July 24, 2026).

[5] *Id.*

stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Breach will remain for their respective lifetimes.

10.    As a result of Defendant's inadequate digital security procedures, Plaintiff's and Class Members' have suffered and will continue to suffer injuries including: loss of property, use of their vehicles, and lost wages.

11.    Plaintiff brings this action on behalf of all persons impacted as a result of Defendant's failure to: (i) adequately protect its IT Network from unauthorized access; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) using reasonable and adequate security procedures free of vulnerabilities and Breaches; and (iv) timely notify Plaintiff and Class Members of the Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

12.    Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; negligence *per se*; unjust enrichment, and breach of implied contract.

## II.    PARTIES

13.    Plaintiff Robert Million is a citizen and resident of Crystal, Minnesota.

14.    Defendant is a limited liability company maintaining its principal place of business at 11035 Aurora Ave, Urbandale, Iowa, 50322. Defendant's registered agent is Corporation Service Company located at 505 5th Ave, Suite 729, Des Moines, Iowa, 50309.

## III.    JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant, namely Plaintiff.

16. This Court has personal jurisdiction over Defendant because its principal place of business is in this District, it regularly conducts business in this District, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

17. Venue is proper under 18 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

### IV.   FACTUAL ALLEGATIONS

#### A.  Background on Defendant

18. Defendant is a provider of IIDs or car breathalyzers, helping individuals with DUI/OWI convictions resume driving safely.[6]

19. Plaintiff and Class Members are current or former customers of Defendant.

20. As a condition of obtaining services with Defendant, Plaintiff and Class Members were required to provide Defendant with their sensitive and confidential Private Information and pay for services.

21. Upon information and belief, Defendant made promises and representations to individuals, including Plaintiff and Class Members, that it maintained adequate security processes and procedures to guard its IT Network from unauthorized access.

22. Plaintiff and Class Members utilized Defendant's services with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to secure its IT Network from unauthorized access and ensure uninterrupted use of its products.

#### B.  The Breach

23. On March 14, 2026, Defendant experienced a Breach.[7] As a result of the Breach, installations, calibrations, account access, and other court-ordered services of Defendant were

---

[6] https://www.intoxalock.com/about#:~:text=About%20Intoxalock,used%20in%20all%2050%20states. (last visited July 24, 2026).

[7] https://techcrunch.com/2026/03/20/cyberattack-on-vehicle-breathalyzer-company-leaves-drivers-stranded-across-the-us/ (last visited July 24, 2026).

disrupted.[8] This has resulted in many customers, including Plaintiff and Class Members, from being able to provide a negative alcohol breath sample in order start their vehicles.[9]

24.    Defendant failed to take precautions designed to keep its IT Network secure.

25.    While Defendant sought to minimize the damage caused by the Breach, it cannot and has not denied that there was unauthorized access to its IT Network that resulted in Plaintiff and Class Members inability to

26.    Defendant admits that an unauthorized third party accessed its IT Network. Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

27.    Despite its own knowledge of the inherent risks of cyberattacks, , Defendant failed to disclose that its systems and security practices were inadequate.

**C. The Harm Caused by the Breach**

28.    As a result of the Breach, Plaintiff and Class Members vehicles became inoperable, creating substantial harm to Plaintiff and Class Members.

29.    When a vehicle becomes inoperable, drivers are often left stranded without warning, sometimes in hazardous conditions such as extreme weather, or unsafe neighborhoods. This sudden loss of vehicle function compromises driver and passenger safety, increases the risk of accidents or injuries, and necessitates emergency measures such as towing or roadside assistance. The inoperability is not a minor inconvenience but a critical failure that renders the vehicle under to start.

30.    Beyond the safety risks, vehicle inoperability poses significant financial burdens on affected consumers, such as Plaintiff and Class Members. Plaintiff and Class Members incurred the loss of use of their vehicles (a form of personal property), and may incur out-of-pocket costs for towing, rental vehicles, and alternative transportation. Moreover, Plaintiff and Class Members may continue to make loan or lease payments, insurance payments, and registration fees on

---

[8] https://cybernews.com/news/intoxalock-hack-breathalyzer-devices-cars-wont-start-us/ (last visited July 24, 2026).
[9] *Id.*

vehicles that cannot be driven, compounding their economic losses. These expenses were not bargained for at the time Plaintiff and Class Members obtained Defendant's product.

31.    Moreover, the Breach has resulted in lost wages for Plaintiff and Class Members, who rely on their vehicles as a mode of transportation to work. Plaintiff and Class Members may also be required to take unpaid leave or exhaust limited paid time off, further diminishing their overall compensation and financial security.

32.    Accordingly, Plaintiff and Class Members have suffered and will continue to suffer ascertainable economic damages in the form of loss of use, lost wages, lost earning capacity, and related employment benefits. These damages are directly attributable to the Breach and were reasonably foreseeable given the essential role that a functioning vehicle plays in maintaining employment.

**D. Defendant Failed to Comply with Regulatory Guidance and Industry-Standard Cybersecurity Practices**

33.    Defendant's data security failure stems from its failure to comply with state law and federal laws and requirements as well as industry standards governing the protection of PII.

34.    At least 24 states have enacted laws addressing data security practices that require businesses that own, license or maintain PII to implement and maintain reasonable security procedures and practices and to protect PII from unauthorized access.

35.    Defendant also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

36.    The FTC recommends:

- Limiting access to customer information to employees who have a business reason to see it;
- keeping customer information in encrypted files provides better protection in case of theft;
- maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;
- using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;
- monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from your system to an unknown user; and,
- monitoring activity logs for signs of unauthorized access to customer information.[10]

37.     The FTC has also issued numerous guidelines for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

38.     In 2016, the FTC updated its publication, Protecting PII: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[11] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

39.     The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information;

---

[10] Federal Trade Commission, *FTC Safeguards Rule: What Your Business Needs to Know*, available at https://www.ftc.gov/business-guidance/resources/ftc-safeguards-rule-what-your-business-needs-know (last visited July 24, 2026).
[11] Federal Trade Commission, *Protecting PII: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited July 24, 2026).

apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

40. The FTC also recommends that companies use an intrusion detection system to immediately expose a Breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a Breach in the event one occurs.

41. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

42. The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

43. According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common type of cybercrime in 2020, with such Breaches nearly doubling in frequency between 2019 and 2020.[12] According to Verizon's 2025 Breach Investigations Report, 30% of breaches were linked to third-party involvement.[13]

44. On October 28, 2020, the FBI and two federal agencies issued a "Joint Cybersecurity Advisory" warning that they have "credible information of an increased and imminent cybercrime threat to U.S. hospitals and healthcare providers."[14] The Cybersecurity and Infrastructure Security Agency (CISA), the Department of Health and Human Services (HHS),

---

[12] *2020 Internet Crime Report*, FBI, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf (last visited July 24, 2026).

[13] https://www.verizon.com/business/resources/reports/dbir/ (last visited July 24, 2026).

[14] *Ransomware Activity Targeting the Healthcare and Public Health Sector*, JOINT CYBERSECURITY ADVISORY, https://www.cisa.gov/sites/default/files/publications/AA20-302A_Ransomware%20_Activity_Targeting_the_Healthcare_and_Public_Health_Sector.pdf (last visited July 24, 2026).

and the FBI issued the advisory to warn healthcare providers to take "timely and reasonable precautions to protect its networks from these threats."[15]

45.    Defendant was aware of its obligations to protect customers' Private Information and privacy before and during the Breach, yet failed to take reasonable steps to protect its patients from unauthorized access. In this case, Defendant was at all times fully aware of obligation to protect the Private Information of Defendant's patients because of its experience as a telehealth company that claims to be "[p]owering the future of telehealth."[16] Defendant was also aware of the significant repercussions if it failed to do so because Defendant collected Private Information from thousands of customers and knew that this Private Information, if hacked, would result in injury to consumers, including Plaintiff and Class Members.

46.    Based upon the known details of the Breach and how it occurred, Defendant also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

**E.    The Breach put Plaintiff and Class Members at Increased Risk of Fraud and Identity Theft**

47.    Defendant's failure to keep Plaintiff's and Class Members' Private Information secure has severe ramifications. Given the sensitive nature of the Private Information impacted in the Breach—names, email addresses, phone numbers, addresses, Social Security numbers, driver's licenses and financial information—hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. As a result, Plaintiff has suffered injury and faces an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Breach.

48.    There is little doubt that consumers' Private Information from the Breach will be circulating on the dark web, as it is highly valuable. Malicious actors use Private Information to,

---

[15] *Id.*

[16] https://openloophealth.com/team (last visited July 24, 2026).

among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' Private Information to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."[17]

49.    Further, identity thieves often wait months or years to use Private Information obtained in Breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen Private Information, meaning individuals can be the victim of several cybercrimes stemming from a single data Breach. Moreover, although elements of some Plaintiff's and Class Members' data may have been compromised in other Breaches, the fact that the Breach centralizes the Private Information and identifies the victims as Defendant's customers materially increases the risk to Plaintiff and the Class.

50.    The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[18] Moreover, there is often significant lag time between when a person suffers harm due to theft of their Private Information and when they discover the harm. Plaintiff will therefore need to spend time and money to continuously monitor his accounts for years to ensure the Private Information obtained in the Breach is not used to harm him. Plaintiff and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Breach. In other words, Plaintiff and Class Members have been harmed by the value of identity protection

---

[17] A criminal combines real and fake information to create a new "synthetic" identity, which is used to commit fraud.
[18] U.S. Gov't Accountability Off., GAO-07-737, Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown 42 (2007), https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last visited July 24, 2026).

services they must purchase in the future to ameliorate the risk of harm they now face due to the Breach.

51.     Plaintiff and Class Members have also realized harm in the lost or reduced value of their Private Information. Defendant admits the Private Information compromised in the Breach is valuable. Defendant collects, retains, and uses Plaintiff's and Class Members' Private Information to earn revenue. Plaintiff's and Class Members' Private Information is not only valuable to Defendant, but Plaintiff and Class Members also place value on their Private Information based on the understanding that their Private Information is a financial asset to companies who collect it.[19]

52.     Plaintiff and Class Members have also been harmed and damaged in the amount of the market value of the unauthorized actor's access to Plaintiff's Private Information that was permitted without authorization by Defendant. This market value for access to Private Information can be determined by reference to both legitimate and illegitimate markets for such information.

53.     Moreover, Plaintiff and Class Members value the privacy of this information and expect Defendant to allocate enough resources to ensure it is adequately protected. Customers would not have done business with Defendant, provided their Private Information and payment card information, or paid the same prices for Defendant's goods and services had they known Defendant did not implement reasonable security measures to protect their Private Information.[20] Customers reasonably expect that the payments they make to Defendant, incorporate the costs to implement reasonable security measures to protect customers' Private Information. And because

[19] *See, e.g.*, Ponemon Institute, LLC, *Privacy and Security in a Connected Life: A Study of US, European and Japanese Consumers* at p. 14 (March 2015) (explaining that 53% of respondents "believe personal data is a financial asset similar to traded goods, currencies or commodities" and valuing, as but one example, its Social Security number at $55.70), available at https://docplayer.net/836701-Privacy-and-security-in-a-connected-life-a-study-of-us-european-and-japanese-consumers.html

[20] FireEye, *Beyond the Bottom Line: The Real Cost of Data Breaches* (May 11, 2016), https://www.e-isac.info/content/files/2024/03/rpt-beyond-bottomline.pdf (last visited July 24, 2026) (noting approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less PII to organizations that suffered a data breach).

consumers value data privacy and security, companies with robust data security practices can command higher prices than those who do not. As a result, Plaintiff and Class Members did not receive the benefit of their bargain with Defendant because they paid for services they expected but did not receive.

54.     Given Defendant's failure to protect consumers' Private Information, Plaintiff and the Class Members have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages, restitution, or disgorgement) that protects them from suffering further harm, as their Private Information remain in Defendant's possession. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

55.     In sum, Plaintiff and Class Members were injured as follows: (i) theft of their Private Information and the resulting loss of privacy rights in that information; (ii) improper disclosure of their Private Information; (iii) loss of value of their Private Information; (iv) the lost value of unauthorized access to Plaintiff's and Class Members' Private Information permitted by Defendant; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Breach; (vi) Defendant's retention of profits attributable to Plaintiff's and Class Members' Private Information that Defendant failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of its time allocated to fixing or mitigating the effects of the Breach; (ix) overpayments to Defendant for goods and services purchased, as Plaintiff reasonably believed a portion of the sale price would fund reasonable security measures that would protect their Private Information, which was not the case; and (x) nominal damages.

### F.  Plaintiff's Experiences & Injuries

56.     At all times relevant, Plaintiff was a customer of Defendant, and a victim of the Breach.

57.     Plaintiff would not have purchased Defendant's product had he known that Defendant maintained inadequate security procedures to protect its IT Network from unauthorized access and could not ensure its product's consistent functionality.

58.     In order to obtain services from Defendant, Plaintiff was required to provide his Private Information to Defendant.

59.     Plaintiff diligently protects his Private Information and has never knowingly sent unencrypted Private Information over the internet.

60.     As a result of the Breach, Plaintiff made reasonable efforts to mitigate the impact of the Breach, including but not limited to researching the Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors his Private Information closely and has already spent many hours dealing with the Breach, valuable time Plaintiff otherwise would have spent on other activities.

61.     Plaintiff suffered actual injury as a result of the Breach including, but not limited to (a) damage to and diminution in the value of Private Information, a form of property that Defendant obtained from Plaintiff; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

62.     As a result of the Breach, Plaintiff has experienced anxiety and increased concerns over the exposure of his Private Information.

63.     As a result of the Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Breach. As a result of the Breach, Plaintiff is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

64.     Plaintiff greatly values his privacy, and would not have provided his Private Information, undertaken the services and paid the amounts that he did if he had known that his Private Information would be maintained using inadequate data security systems.

## V.     CLASS ALLEGATIONS

65. Plaintiff brings this class action, individually and on behalf of the following Nationwide Class:

All persons residing in the United States whose Private Information was impacted in Defendant's Breach (the "Class").

66. Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

67. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

68. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

69. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

70. Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, could not properly use Defendant's product as a result of the Breach. Plaintiff is a member of the Class, and his claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

71. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the

Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

72. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

73. Predominant Common Questions: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

    a. whether Defendant engaged in the conduct alleged herein;

    b. whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff's and Class Members' Private Information;

    c. whether Defendant timely, accurately, and adequately informed Plaintiff and Class Members that their Private Information had been compromised;

    d. whether Defendant breached its legal duty by failing to protect the Private Information of Plaintiff and Class Members;

    e. whether Defendant acted reasonably in securing the Private Information of Plaintiff and Class Members;

    f. whether Plaintiff and Class Members are entitled to injunctive relief; and

    g. whether Plaintiff and Class Members are entitled to damages and equitable relief.

74. Information concerning Defendant's policies is available from Defendant's records.

75. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

76.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

77.     Given that Defendant had not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

78.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 70, as though fully set forth herein.

79.     Plaintiff brings this claim individually and on behalf of the Class Members.

80.     Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information and accepted payments for its product, and had a duty to exercise reasonable care in safeguarding, securing, and protecting its IT Network from unauthorized parties.

81.     Defendant had a duty to have procedures in place to detect and prevent the disruption of its products for Plaintiffs and Class Members.

82.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, were adequately protected from unauthorized access.

83.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members.

84.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to secure its IT Network and systems.

85.     Defendant breached these duties by failing to exercise reasonable care in safeguarding to prevent the Breach.

86.     The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

   a. Failing to adopt, implement, and maintain adequate security measures to safeguard against unauthorized access to its IT Network;

   b. Failing to adequately monitor the security of its networks and systems; and

   c. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

87.     Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding its IT Network and systems.

88.     Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent unauthorized access to its IT Network and systems.

89.     It was foreseeable that Defendant's failure to use reasonable measures to safeguard its IT Network and systems would result in injury to Plaintiff and Class Members. Further, the Breach was reasonably foreseeable given the known high frequency of cyberattacks.

90. It was foreseeable that Defendant's breach of its duties would result in injuries to Plaintiff and Class Members.

91. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' harm.

92. But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their vehicles would not have been rendered inoperable.

93. As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members have and will continue to suffer ascertainable economic damages in the form of lost wages, lost earning capacity, and related employment benefits, and costs associated with having to secure alternative means of transportation. These damages are directly attributable to Defendant's conduct and were reasonably foreseeable.

**SECOND CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

94. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 70 as though fully set forth herein.

95. Plaintiff and Class Members, upon information and belief, entered into express contracts with Defendant that included Defendant's promise to provide a fully functioning product and adequate security processes and procedures, in exchange for payment.

96. Plaintiff and Class Members performed their obligations under the contracts when they provided payment to Defendant in exchange for Defendant's product.

97. Defendant breached its contractual obligations to Plaintiff and Class Members when the Breach occurred, rendering Defendant's product inoperable.

98. As a direct and proximate result of Defendant's above-described breach of contract, Plaintiff and Class Members have and will continue to suffer ascertainable economic damages in the form of lost wages, lost earning capacity, and related employment benefits, and costs associated with having to secure alternative means of transportation. These damages are directly attributable to Defendant's conduct and were reasonably foreseeable.

## THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and the Class)**

99.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 70 as though fully set forth herein.

100.    This count is pled in the alternative to Count II, Breach of Contract, above.

101.    Plaintiff and Class Members conferred a benefit upon Defendant by purchasing Defendant's product.

102.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's and Class Members' payments.

103.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' payments because Defendant failed to adequately maintain proper security processes and procedures to prevent functionality disruptions of its product. Plaintiff and the proposed Class would not have purchased Defendant's product had they known that Defendant did not adequately protect its IT Network and systems, and thus, could not ensure its products' consistent functionality.

104.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Breach it caused.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and his counsel as Class Counsel;

(b)     For an order declaring that Defendant's conduct violates the laws referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For damages in amounts to be determined by the Court and/or jury;

(e)     For an award of statutory damages or penalties to the extent available;

(f)     For pre-judgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of monetary relief; and

(h)     Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: July 27, 2026

/s/ *J. Barton Goplerud*
J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
**SHINDLER ANDERSON GOPLERUD &
WEESE P.C.**
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Tel: (515) 223-4567
F: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One W Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

*Attorneys for Plaintiff and
The Proposed Class*

**pro hac vice* forthcoming