**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| ROBERT MILLION, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER SAFETY TECHNOLOGY, LLC D/B/A INTOXALOCK,<br><br>Defendant, | Case No: 4:26-cv-00302-RGE-HCA |

**DEFENDANT CONSUMER SAFETY TECHNOLOGY, LLC D/B/A INTOXALOCK'S BRIEF IN SUPPORT OF MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO CONSOLIDATE PLAINTIFF'S COMPLAINT WITH ONGOING CONSOLIDATED MATTER**

**(Oral Argument Requested)**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 1

MEMORANDUM OF LAW ........ 3

I. STANDARD OF REVIEW ........ 3

A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction ........ 3

B. Rule 12(b)(6) – Failure to State a Claim ........ 4

ARGUMENT ........ 4

II. Legal Arguments ........ 4

A. Plaintiff Lacks Standing Because He Failed to Adequately Plead an Injury-in-Fact ........ 4

i. Plaintiff's Complaint Relies on Speculative Claims of Unsubstantiated Harm ........ 6

ii. Conclusory Allegations of Lost Time and Out-Of-Pocket Expenses do not Demonstrate Injury-in-Fact ........ 8

iii. Plaintiff's allegations of diminution in the value of his PII do not confer standing ........ 9

iv. Plaintiff's allegations of emotional distress do not confer standing ........ 10

v. Plaintiff's allegations of loss of privacy do not confer standing ........ 10

vi. Plaintiff's loss of use damages are inadequately pled ........ 11

B. Plaintiff Fails to State a Plausible Claim for Relief on the Merits ........ 12

i. Plaintiff fails to state a negligence claim ........ 12

1. Plaintiff's Negligence cause of action is barred by the Economic Loss Rule ........ 12

2. Plaintiff failed to allege he sustained damages as a result of Intoxalock's Negligence ........ 14

ii. Plaintiff fails to state a breach of contract claim ........ 14

iii. Plaintiff fails to state an unjust enrichment claim....................................... 15

C. Rule 42(a) – Consolidation of Actions ................................................................ 16

CONCLUSION........................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accurate Controls, Inc. v. Cerro Gordo Cnty. Bd. of Sup'rs*,
627 F. Supp. 2d 976 (N.D. Iowa 2009) ........ 3

*Aguilar v. Mortg. Elec. Registration Sys., Inc.,*
No. CIV. 13-1080 ADM/JSM, 2014 WL 297709 (D. Minn. Jan. 28, 2014)........ 4

*Annett Holdings, Inc. v. Kum & Go, L.C.*,
801 N.W.2d 499 (Iowa 2011)........ 12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........Passim

*Behm v. City of Cedar Rapids*,
922 N.W.2d 524 (Iowa 2019)........ 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Berry v. Crescent Cmty. Health Ctr.,*
No. 24-CV-1036-CJW-KEM, 2025 WL 1287909 (N.D. Iowa May 2, 2025)........ 7

*Bock v. Washington*,
33 F.4th 1139 (9th Cir. 2022)........ 7

*C&C Int'l Trading Co. v. Buckhead Meat Co.*,
527 F. Supp. 3d 1016 (E.D. Ark. 2021)........ 16

*Cantrell v. GAF Corp.*,
999 F.2d 1007 (6th Cir. 1993) ........ 18

*Chariton Feed & Grain, Inc. v. Harder*,
369 N.W.2d 777 (Iowa 1985)........ 15

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 5, 8

*Corona v. Sony Pictures Entm't, Inc.*,
2015 WL 3916744 (C.D. Cal. June 15, 2015)........ 9

*Devine v. Horizontal Integration, Inc.,*
No. 24-CV-4555 (JMB/DLM), 2025 WL 3687972 (D. Minn. Dec. 19, 2025)........ 10

*Duqum v. Scottrade, Inc.*,
No. 4:15-CV-1537-SPM, 2016 WL 3683001 (E.D. Mo. July 12, 2016) .............................. 9, 11

*E.E.O.C. v. HBE Corp.*,
135 F.3d 543 (8th Cir. 1998) .............................. 18

*E.E.O.C. v. Von Maur, Inc.*,
237 F.R.D. 195 (S.D. Iowa 2006).............................. 18

*Eidschun v. Pierce*,
335 F. Supp. 603 (S.D. Iowa 1971) .............................. 17

*Enter. Bank v. Saettele*,
21 F.3d 233 (8th Cir. 1994) .............................. 17

*Everhart v. Colonial Pipeline Co.*,
2022 WL 3699967 (N.D. Ga. July 22, 2022) .............................. 9

*Frazier y. Garrison I.S.D.*,
980 F.2d 1514 (5th Cir. 1993) .............................. 17

*Fryfogle v. First Nat. Bank of Greencastle*,
No. CIV. 6:07CV00035, 2009 WL 700161 (W.D. Va. Mar. 17, 2009).............................. 13

*Gillis v. Principia Corp.*,
832 F.3d 865 (8th Cir. 2016) .............................. 14

*Harris v. Mercy Health Network, Inc.*,
No. 4:23-CV-00195-SHL-SBJ, 2024 WL 5055556 (S.D. Iowa June 26, 2024) .............................. 7

*Hawse v. Page*,
7 F.4th 685 (8th Cir. 2021) .............................. 6, 12

*In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.*,
820 F. Supp. 3d 820 (D. Minn. 2025).............................. 8

*In re Sav-Rx Data Breach Litig.*,
No. 8:24CV204, 2025 WL 1237554 (D. Neb. Apr. 29, 2025) .............................. 18

*In re SuperValu, Inc.* (“*Supervalu I*”),
2016 WL 81792 (D. Minn. Jan. 7, 2016) .............................. 9, 10

*In re SuperValu, Inc.* (“*Supervalu II*”),
870 F.3d 763 (8th Cir. 2017) ..............................Passim

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014).............................. 12

*In re TJX Companies Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009) ........ 13

*In re Zappos.com, Inc.*,
108 F. Supp. 3d 949 (D. Nev. 2015) ........ 10

*Iowa Mortg. Ctr., L.L.C. v. Baccam*,
841 N.W.2d 107 (Iowa 2013) ........ 14

*Kisil v. Illuminate Educ., Inc.*,
2025 WL 2589000 (9th Cir. Sept. 8, 2025) ........ 6

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) ........ 14

*Legg v. W. Bank*,
873 N.W.2d 763 (Iowa 2016) ........ 16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 5, 11

*Malcolm v. Nat'l Gypsum Co.*,
995 F.2d 346 (2d Cir. 1993) ........ 18

*Marcus v. Young*,
538 N.W.2d 285 (Iowa 1995) ........ 12

*Marty H. Segelbaum, Inc. v. MW Cap., LLC*,
673 F. Supp. 2d 875 (D. Minn. 2009) ........ 16

*McFarland v. McFarland,*
No. C08-4047-MWB, 2009 WL 692298 (N.D. Iowa Mar. 16, 2009) ........ 5

*Miller v. Lauridsen Foods, Inc.*,
525 N.W.2d 417 (Iowa 1994) ........ 18

*Mohsen v. Veridian Credit Union*,
733 F. Supp. 3d 754 (N.D. Iowa 2024) ........ 12, 13

*Nunley v. Erdmann,*
No. C14-4016-MWB, 2014 WL 5020253 (N.D. Iowa Oct. 8, 2014) ........ 4

*Ojogwu v. Rodenburg L. Firm*,
26 F.4th 457 (8th Cir. 2022) ........ 10

*Osborn v. United States*,
918 F.2d 724 (8th Cir. 1990) ........ 3

*Papasan v. Allain*,
478 U.S. 265 (1986) ........................................................................................... 4

*Pickrell v. Sorin Grp. USA, Inc.*,
293 F. Supp. 3d 865 (S.D. Iowa 2018) ........................................................................ 12

*Pulliam v. W. Tech. Grp., LLC*,
No. 8:23-CV-159, 2024 WL 356777 (D. Neb. Jan. 19, 2024) ................................................ 10

*Reuter v. Jax Ltd., Inc.*,
711 F.3d 918 (8th Cir. 2013) ................................................................................... 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................... 3, 5, 11

*Titus v. Sullivan*,
4 F.3d 590 (8th Cir.1993) ...................................................................................... 6

*TransUnion, LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................... 5, 6

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021) ................................................................................ 7

*Veeder v. Omaha Tribe of Neb.*,
864 F. Supp. 889 (N.D. Iowa 1994) ........................................................................... 3

*Villarini v. Iowa City Cmty. Sch. Dist.*,
21 N.W.3d 129 (Iowa 2025) ..................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 1, 3, 5, 19

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 4, 19

Fed. R. Civ. P. 42 ............................................................................................... 1, 17

Fed. R. Civ. P. 42(a) ............................................................................................ 17, 18, 19

## INTRODUCTION

This lawsuit relies entirely on unsubstantiated and conclusory allegations of harm such that the allegations in Plaintiff Robert Million's (hereafter "Plaintiff") Complaint fail to demonstrate that he sustained a cognizable injury as a result of a data breach incident. Although Plaintiff's lawsuit alleges the Defendant, Consumer Safety Technology, LLC dba Intoxalock (hereafter "Intoxalock"), was the victim of a data privacy incident perpetrated by a criminal third party which resulted in service interruptions and the unauthorized access of its customers' personal information, the Complaint does not contain any factual allegations indicating Plaintiff was personally impacted by the alleged service interruptions or unauthorized access. Plaintiff brings three causes of action on behalf of himself and a class of similarly situated individuals arising from the Incident: (1) negligence; (2) unjust enrichment; and (3) breach of contract.

Intoxalock contends Plaintiff's Complaint warrants dismissal because it fails to adequately allege facts demonstrating the Plaintiff sustained any injury-in-fact and therefore Plaintiff lacks Article III standing. Accordingly, the Court cannot exercise subject matter jurisdiction over this matter and Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). If the Court finds standing, the Complaint should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

Alternatively, should Intoxalock's motion to dismiss not be granted on the basis of Fed. R. Civ. P.12(b)(1) or Fed. R. Civ. P.12(b)(6), Intoxalock moves to consolidate the Plaintiff's Complaint with the ongoing consolidated matter *Praznik, et al. v. Consumer Safety Technology, LLC D/B/A Intoxalock,* Case No. 4:26-cv-00130-SMR-HCA, pursuant to Fed. R. Civ. P. 42.

## BACKGROUND

Intoxalock is a manufacturer and provider of ignition interlock devices ("IIDs"), more commonly known as breathalyzers. *See* Dkt. 1 ("Comp") ¶ 4. Like many companies, Intoxalock

strives to protect the digital data it obtains from its customers. Unfortunately, despite Intoxalock's best efforts, on or about March 14, 2026, Intoxalock fell victim to a data breach incident perpetrated by a criminal third-party actor who gained access to its network (the "Incident"). *See id* ¶¶ 4, 7, 23, 26. The Incident resulted in service outages for customers who had IIDs installed in their vehicles. *Id.* ¶¶ 4, 7, 23, 26.

On July 27, 2026, Plaintiff filed the present class action lawsuit. Plaintiff's Complaint alleges Plaintiff was an Intoxalock customer. *Id.* ¶ 56. Although Plaintiff alleges the Incident resulted in service outages which resulted in loss of property, loss of use of their vehicles, and loss of wages, *see* ¶ 10, the Complaint does not allege Plaintiff himself personally experienced a service interruption or that he lost the use of his vehicle or experienced loss of wages. *See id* ¶¶ 56-64. Also, Plaintiff alleges he sustained damages and will potentially suffer future damages due to his private information being impacted by the Incident, *see* ¶¶ 61-63, but the Complaint does not identify what private information belonging to the Plaintiff was impacted by the Incident nor does he allege that he experienced any data misuse or exploitation attributable to the Incident. *See id.*

Instead, Plaintiff's Complaint relies on alleged harm that is speculative and conjectural. This includes speculative claims of diminution of personal information, violation of privacy rights, and an increased risk of identity theft and fraud. *Id.* ¶ 61. Plaintiff also relies on unsubstantiated claims of "anxiety and increased concerns" of exposure and unquantified allegations of mitigation efforts. *See Id.* ¶¶ 62-63. Additionally, although the Plaintiff claims he will suffer future harm because of the Incident, the alleged future damages are completely hypothetical. *Id.* ¶ 63.

Finally, the Plaintiff's Complaint appears to contain recycled allegations as it contains allegations that are inconsistent with relevant facts at issue. Despite Intoxalock being a provider of IIDs, the Complaint describes Intoxalock as a "telehealth company" responsible for collecting and protecting "patient" information. *See id.* ¶ 45. The Complaint alleges Intoxalock owed its

"patients" an obligation to protect their personal information by referencing a link to a website operated by OpenLoop, which, based on the referenced weblink appears to be a digital health infrastructure provider.[1] *See id.* Intoxalock is not and has never been a digital health infrastructure provider. The Complaint also relies on advisory guidelines for health care providers despite the fact that Intoxalock is not a healthcare-related entity. *See id.* ¶ 44.

## MEMORANDUM OF LAW

## I. STANDARD OF REVIEW

### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

"[F]ederal courts are courts of limited jurisdiction and must assure themselves that they have subject matter jurisdiction over claims." *Accurate Controls, Inc. v. Cerro Gordo Cnty. Bd. of Sup'rs*, 627 F. Supp. 2d 976, 985 (N.D. Iowa 2009). Under Rule 12(b)(1), "a party may raise the defense of 'lack of jurisdiction over the subject matter' in a motion before answering the complaint filed in any action." *Veeder v. Omaha Tribe of Neb.,* 864 F. Supp. 889, 893 (N.D. Iowa 1994). Subject matter jurisdiction is a threshold issue to be determined by the Court. *See id.; see also Osborn v. United States,* 918 F.2d 724, 729 (8th Cir. 1990).

"Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies. A plaintiff invoking the jurisdiction of the court must demonstrate standing to sue by showing that she has suffered an injury in fact that is fairly traceable to the defendant's conduct and that is likely to be redressed by the relief she seeks." *In re SuperValu, Inc.*, 870 F.3d 763, 767–68 (8th Cir. 2017) ("*Supervalu II*") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). As such, "at the pleading stage, plaintiffs must clearly allege facts demonstrating the elements of standing." *Supervalu II*, 870 F.3d at 768 (internal quotations omitted).

[1] https://openloophealth.com/team

### B. Rule 12(b)(6) – Failure to State a Claim

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Accordingly, a complaint must allege a factual basis for each element of each cause of action. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "[F]ormulaic recitation of the elements of a cause of action will not do," *Twombly,* 550 U.S. at 570, nor is a court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 570. "While factual 'plausibility' is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable legal theory." *Nunley v. Erdmann,* No. C14-4016-MWB, 2014 WL 5020253, at *3 (N.D. Iowa Oct. 8, 2014) (emphases removed).

Finally, dismissal without leave to amend is proper where the complaint cannot be cured by amendment. *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) ("A district court may deny leave to amend if there are compelling reasons such as . . . futility of the amendment.") (internal quotations omitted); *see also Aguilar v. Mortg. Elec. Registration Sys., Inc.,* No. CIV. 13-1080 ADM/JSM, 2014 WL 297709, at *14 n.8 (D. Minn. Jan. 28, 2014) ("when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.").

## ARGUMENT

## II. Legal Arguments

### A. Plaintiff Lacks Standing Because He Failed to Adequately Plead an Injury-in-Fact

To satisfy the Article III standing requirement on a facial basis, a plaintiff must plausibly plead three elements: (1) the plaintiff suffered an "injury in fact"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 429 (2021).

An injury-in-fact must be concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.' *Spokeo,* 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). Moreover, "[t]o establish an injury in fact, a plaintiff must show that her injury is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Supervalu II*, 870 F.3d at 768 (quoting *Spokeo*, 578 U.S. at 339). Because an injury-in-fact cannot be conjectural or hypothetical, mere "[a]llegations of possible future injury are not sufficient" therefore a "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 568 U.S. at 409 (emphasis in original).

Furthermore, in a putative class action, every class member must have Article III standing in order to recover individual damages. *See Spokeo*, 578 U.S. at 338 n.6 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.") (internal quotations omitted). "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 594 U.S. at 431.

A motion under Rule 12(b)(1) may be either a facial or factual challenge to jurisdiction. *See, e.g., McFarland v. McFarland,* No. C08-4047-MWB, 2009 WL 692298, at *2 (N.D. Iowa

Mar. 16, 2009) (citing *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993)). Facial standing challenges contend that legal conclusions couched as facts are insufficient and a "threadbare allegation of an element of standing" does not count. *Hawse v. Page*, 7 F.4th 685, 691 (8th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678) (Courts considering a facial standing challenge "are not bound to accept as true a legal conclusion couched as a factual allegation.").

i. Plaintiff's Complaint Relies on Speculative Claims of Unsubstantiated Harm

Plaintiff's Complaint is devoid of allegations demonstrating he sustained any cognizable harm as a result of the Incident. Instead, the Plaintiff's Complaint relies on allegations of harm that are completely speculative. Despite not alleging any instance of perceived data misuse or exploitation, the Plaintiff alleges he is at an increased risk of future harm such as fraud or attempted fraud. *See* Comp. ¶¶ 48-49, 55, 61, 63. However, such allegations are insufficient to confer standing. In *TransUnion*, the U.S. Supreme Court determined that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm – at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion*, 594 U.S. at 436 (emphasis in original). Accordingly, a plaintiff must show harm has materialized in order to demonstrate he has standing. *Id.*

Indeed, even before *TransUnion*, courts rejected such allegations as "hypothetical," and not "concrete," "particularized," or "imminent." The Eighth Circuit determined that allegations of future harm unsupported by allegations of actual data misuse do not suffice. *See Supervalu II,* 870 F.3d at 771–72 (absent allegations of data misuse "mere possibility is not enough for standing"). Other circuits have adopted a similar approach in determining the existence of standing in data breach lawsuits. The Ninth Circuit has found that plaintiffs lack standing when they only allege "imminent and substantial risk of future harm in the form of identity theft" but do not allege the occurrence of data theft or misuse. *See Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000, at

*2 (9th Cir. Sept. 8, 2025), *citing Bock v. Washington*, 33 F.4th 1139, 1144–45 (9th Cir. 2022). The Eleventh Circuit noted that "cases conferring standing after a data breach based on an increased risk of theft or misuse included at least some allegations of actual misuse or actual access to personal data." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1340 (11th Cir. 2021).

In *Harris v. Mercy Health Network, Inc*., this court determined that several plaintiffs did not have standing because the plaintiffs only alleged potential future harm following a data breach but did not allege actual data misuse. *See* No. 4:23-CV-00195-SHL-SBJ, 2024 WL 5055556, at *7 (S.D. Iowa June 26, 2024) ("mere possibility is not enough for standing . . . [p]laintiffs . . . do not have standing in these circumstances based on the risk of future injury.") (internal quotations omitted).

Here, the section of Plaintiff's Complaint dedicated to describing his "experiences and injuries" only alleges that he is at an increased risk of future harm due to the Incident but does not actually allege he experienced any semblance of data misuse. *See* Comp. ¶¶ 56-64. The rest of the Complaint is devoid of any allegations that Plaintiff experienced any perceived misuse following the Incident. Accordingly, the Plaintiff's "risk of future harm" allegations are entirely hypothetical and conjectural and do not demonstrate that he sustained an injury-in-fact.

Moreover, the Complaint does not describe what personal information belonging to the Plaintiff was affected by the Incident. Usually, plaintiffs in data breach lawsuits allege that they received a notice informing them of specific data elements impacted by a breach incident. *See, e.g., Berry v. Crescent Cmty. Health Ctr.,* No. 24-CV-1036-CJW-KEM, 2025 WL 1287909, at *1 (N.D. Iowa May 2, 2025) ("[the] notice plaintiff received stated that plaintiff's date of birth, Social Security number, medical information, health insurance information, and treatment cost information" were affected). Plaintiff's Complaint makes no such allegations. Although the

Complaint contains a generic list of data elements, *see* Comp. ¶ 47, this is merely a boilerplate list of information that *could have been* affected by the Incident but does not actually describe the information specific to the Plaintiff that was impacted by the Incident. In determining whether a plaintiff is at risk of a future harm that is substantial and imminent following a data breach, the Eighth Circuit considers the information allegedly impacted by the data breach. *See Supervalu II,* 870 F.3d at 770-71 (determining plaintiffs were not at risk of future fraud because the plaintiffs alleged their credit card information alone was impacted by the breach). Here, however, Plaintiff does not identify which of his information was impacted, making that evaluation impossible. Accordingly, Plaintiff's allegations of future harm do not demonstrate that he is at risk of harm that is substantial and imminent such that it demonstrates Article III standing.

ii. Conclusory Allegations of Lost Time and Out-Of-Pocket Expenses do not Demonstrate Injury-in-Fact

Plaintiff alleges he incurred damages in his attempt to mitigate the impact of the Incident. *See* Comp. ¶¶ 55, 60. However, courts throughout the United States have uniformly rejected claims of lost time and "out-of-pocket" costs as a basis for Article III standing, where the plaintiffs fail to plausibly allege that they are at imminent risk of identity theft. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. In the Eighth Circuit, mitigation costs can demonstrate Article III standing in a data breach class action *only* where there is an underlying risk of future harm that is substantial and imminent. *See Supervalu II*, 870 F.3d at 771 (absent "alleg[ations of] a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury"); *see also In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.,* 820 F. Supp. 3d 820, 837 (D. Minn. 2025) ("Mitigation costs qualify as concrete injuries sufficient for standing for purposes of monetary relief when there is a substantial risk of future harm."). Thus "alleged damages arising

out of mitigation expenses" fail where "there is no accompanying allegations demonstrating any substantial, certain, or imminent future risk to Plaintiffs' PII." *Everhart v. Colonial Pipeline Co.*, 2022 WL 3699967, at *4 (N.D. Ga. July 22, 2022); *Corona v. Sony Pictures Entm't, Inc.,* 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) ("general allegations of lost time are too speculative to constitute cognizable injury").

Here, the Plaintiff neither alleges specific facts showing an imminent risk of identity theft nor does he specify the amount of time and/or money he spent on such alleged mitigation efforts. Accordingly, Plaintiff's alleged mitigation costs do not demonstrate damages satisfying the injury-in-fact element of Article III standing.

iii. Plaintiff's allegations of diminution in the value of his PII do not confer standing

Plaintiff alleges that as a result of the data breach, he suffered economic damages in the form of the diminution in value of his personal information. Comp. ¶¶ 51, 55, 61. However, courts in the Eighth Circuit have rejected similar claims as being conclusory in nature. In order to adequately allege diminution in the value of their personal information, plaintiffs must allege that they intended to sell their information, attempted to sell their information but were unable to do so because of the breach incident, or that they sold their information but were forced to accept a lower price than they would have received had the breach not occurred. *See Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537-SPM, 2016 WL 3683001, at *7 (E.D. Mo. July 12, 2016); *see also In re SuperValu, Inc.*, No. 14-MD-2586 ADM/TNL, 2016 WL 81792, at *7 (D. Minn. Jan. 7, 2016) ("*Supervalu I*") (court dismissed plaintiff's diminution claims because plaintiffs did not allege facts demonstrating their information became less valuable because of the breach or that plaintiff attempted to sell his information but was unable to because of the breach).

Here, the Plaintiff did not allege his personal information became less valuable as a result of the Incident or that he intended to profit in some way from the sale of his personal information

but was prevented from doing so because of the Incident. Plaintiff also did not allege that he is precluded from profiting from the value of his personal information in the future due to the Incident. Plaintiff's alleged diminution claim does not demonstrate damages satisfying the injury-in-fact element of Article III standing.

iv. Plaintiff's allegations of emotional distress do not confer standing

Plaintiff alleges that as a result of the Incident, "he has experienced anxiety and increased concerns over the exposure of his Private Information." Comp. ¶ 62. The Eighth Circuit has previously held that "nervousness," "restlessness," and other "negative emotions" are not "cognizable injuries." *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022). Where claims of emotional distress are "untethered to a future injury due to a substantial risk of imminent harm," such claims do not confer standing. *Pulliam v. W. Tech. Grp., LLC*, No. 8:23-CV-159, 2024 WL 356777, at *10 (D. Neb. Jan. 19, 2024); *see also Devine v. Horizontal Integration, Inc.*, No. 24-CV-4555 (JMB/DLM), 2025 WL 3687972, at *7 (D. Minn. Dec. 19, 2025) ("[E]motional or psychological harm . . . must be sufficiently connected to an actual disclosure of information to establish standing.").

As discussed above, Plaintiff's Complaint is devoid of allegations demonstrating Plaintiff faces a substantial risk of identity theft stemming from the disclosure of his personal information. Accordingly, Plaintiff's allegations of emotional distress are "untethered" to "substantial risk of imminent harm," *see Pulliam,* 2024 WL 356777, at *10, and therefore his claims of anxiety and emotional distress do not adequately demonstrate Article III standing.

v. Plaintiff's allegations of loss of privacy do not confer standing

Finally, Plaintiff alleges he sustained damages as a result of the Incident in the form of lost privacy. Various trial courts have held that alleging loss of privacy alone is too abstract to establish Article III standing. *See Supervalu I*, 2016 WL 81792, at *8; *see also In re Zappos.com, Inc.,* 108

F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) ("Abstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as a result of the defendant's conduct.") (internal quotations omitted). In *Duqum*, the court deemed Plaintiff's claim of loss of privacy too abstract to establish Article III standing because the plaintiffs did not adequately allege that the claimed loss of privacy resulted in any concrete injuries. *See* 2016 WL 3683001, at *8.

Here, the Plaintiff merely alleges the Incident resulted in a "violation of [his] privacy rights", *see* Comp. ¶ 61, however Plaintiff does not allege he experienced a cognizable concrete injury as a result of this alleged violation. Accordingly, Plaintiff's claim that the Incident violated his privacy rights does not suffice to demonstrate an injury-in-fact satisfying Article III standing.

vi. Plaintiff's loss of use damages are inadequately pled

Plaintiff's Complaint generally alleges the Incident caused service outages which caused Intoxalock customers to lose property, lose the use of their vehicles, and lose wages. *See* Comp. ¶¶ 10, 28–32. These allegations describe harm to customers as a group but do not describe anything that happened to Plaintiff. The section of the Complaint dedicated to Plaintiff's own "experiences and injuries" never alleges his device was affected by the outage. Rather, these paragraphs only address the alleged exposure of his personal information. The Complaint's other references to lost wages and alternative transportation costs are likewise asserted on behalf of "Plaintiff and the Class" without any supporting facts about Plaintiff himself. *See id.* ¶ 98.

That omission is dispositive. To establish standing, an injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). Named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at 338 n.6 (internal quotations omitted). The Eighth Circuit applied this

very rule in a data breach context in *SuperValu II*, where it examined each named plaintiff's individual allegations and found standing for only the plaintiff who alleged that he personally suffered a fraudulent charge. *See* 870 F.3d at 773–74. Generalized allegations that customers were harmed, without alleging facts showing that Plaintiff was among them, are precisely the kind of "threadbare allegation of an element of standing" that does not count on a facial challenge. *Hawse*, 7 F.4th at 691 (citing *Iqbal*, 556 U.S. at 678).

**B. Plaintiff Fails to State a Plausible Claim for Relief on the Merits**

i. Plaintiff fails to state a negligence claim

In Iowa, "'the elements of a negligence claim include existence of a duty to conform to a standard of conduct to protect others, failure to conform to that standard, proximate cause, and damages.'" *Pickrell v. Sorin Grp. USA, Inc.*, 293 F. Supp. 3d 865, 868 (S.D. Iowa 2018) citing *Marcus v. Young*, 538 N.W.2d 285, 288 (Iowa 1995). "[A] cognizable negligence claim must include an actual injury suffered by the plaintiff." *Pickrell*, 293 F. Supp. 3d at 868.

1. *Plaintiff's Negligence cause of action is barred by the Economic Loss Rule*

The damages Plaintiff attributes to the Incident are economic and therefore Plaintiff's negligence cause of action is barred by the Economic Loss Rule. Iowa bars negligence recovery for purely economic losses absent personal injury or damage to property. *See Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503–04 (Iowa 2011). Accordingly, courts applying Iowa law in data breach lawsuits have determined that the Economic Loss Rule bars recovery pursuant to negligence causes of action. *See Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754, 764 (N.D. Iowa 2024); *see also In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1174 (D. Minn. 2014) (dismissing Iowa negligence claims, which were based on a data breach resulting in the theft of their sensitive personal information, due to the Economic Loss Rule). Moreover, the rule applies with extra force where the parties, much like the case at issue,

are in contractual privity with each other and their expectations were set by a contract between the parties. *See Annett,* 801 N.W.2d at 503 ("[w]hen two parties have a contractual relationship, the Economic Loss Rule prevents one party from bringing a negligence action against the other over the first party's defeated expectations—a subject matter the parties can be presumed to have allocated between themselves in their contract.").

Although Plaintiff alleges diminution in the value of his personal information and emotional distress such damages have not spared negligence claims from the Economic Loss Rule. In *Mohsen,* the Northern District of Iowa determined that diminution of value of a Plaintiff's personal information constitutes an economic injury that does not result in damage to property and therefore is subject to Economic Loss Rule. *See Mohsen*, 733 F. Supp. 3d at 765 ("[D]iminution in value is an economic loss, not physical damage to property."); *see also In re TJX Companies Retail Sec. Breach Litig.*, 564 F.3d 489, 498 (1st Cir. 2009) ("Electronic data can have value and the value can be lost, but the loss here is not a result of physical destruction of property.").

Moreover, the *Mohsen* court determined that allegations of emotional harm do not preclude application of the Economic Loss Rule to bar negligence claims because allowing plaintiffs to "simply plead emotional harms based on purely economic injuries would swallow the economic loss rule." *Id.* at 767; *see also Fryfogle v. First Nat. Bank of Greencastle*, No. CIV. 6:07CV00035, 2009 WL 700161, at *7 (W.D. Va. Mar. 17, 2009) ("Claims of emotional distress suffered as a result of the economic loss complained of do not remove the claims from the scope of the economic loss doctrine.").

Accordingly, every category of damages alleged in Plaintiff's Complaint is a form of economic loss, s*ee* Comp. ¶¶ 10, 30-33, 55, 60-64, and the Plaintiff cannot seek recovery pursuant to his negligence cause of action.

2. *Plaintiff failed to allege he sustained damages as a result of Intoxalock's Negligence*

Assuming *arguendo* Plaintiff is allowed to pursue his negligence cause of action, the Plaintiff's claim is defective because the Plaintiff has failed to adequately allege any damages that he incurred as a result of the Incident. Plaintiff's Complaint alleges he has and "will continue to suffer ascertainable economic damages in the form of lost wages, lost earning capacity, and related employment benefits, and costs associated with having to secure alternative means of transportation." Comp. ¶ 93. However, these allegations are no more than "threadbare recitals of the elements" in support of his negligence claim because the Complaint does not contain any factual allegations demonstrating that Plaintiff actually sustained the alleged damages. *See Iqbal* 556 U.S. at 678.

ii. <u>Plaintiff fails to state a breach of contract claim</u>

Under Iowa law, in order to bring a breach of contract cause of action a plaintiff must establish the following elements: "(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach." *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 111 (Iowa 2013); *Villarini v. Iowa City Cmty. Sch. Dist.*, 21 N.W.3d 129, 137 n.5 (Iowa 2025).

The Eighth Circuit has held that a plaintiff must identify the specific contractual provisions in the alleged contract between the parties that the defendant breached in order to maintain a cognizable breach of express contract claim. *See Gillis v. Principia Corp.*, 832 F.3d 865, 871 (8th Cir. 2016). Moreover, in *Kuhns v. Scottrade, Inc.,* the Eighth Circuit determined that "naked assertions devoid of further factual enhancement . . . cannot survive a motion to dismiss." *See* 868 F.3d 711, 717 (8th Cir. 2017) (the plaintiff failed to adequately allege their breach of contract claim because they did not allege defendant affirmatively promised their data would not be hacked and

plaintiff's allegation that the defendant did not maintain sufficient security measures did not assert more than the mere possibility of misconduct).

Plaintiff alleges an express contract existed between himself and Intoxalock wherein Intoxalock "promise[d] to provide a fully functioning product and adequate security processes and procedures, in exchange for payment." Comp. ¶ 95. Plaintiff, however, fails to identify the specific provisions in this contract that Intoxalock breached. Instead, Plaintiff conclusorily alleges the contract was breached "when the [Incident] occurred." *Id.* ¶ 97. This is the kind of naked assertion the Eighth Circuit rejected in *Kuhns.* Accordingly, the Plaintiff has failed to adequately allege the terms and conditions of his contract with Intoxalock or that Intoxalock breached those terms and conditions in some particular way.

Also, Plaintiff's Complaint failed to adequately allege that he sustained damages as a result of the alleged breach. The Complaint alleges that as a result of the breach, the Plaintiff and the class "sustained economic [damages] in the form of lost wages, lost earning capacity, and related employment benefits, and costs associated with having to secure alternative means of transportation." Comp. ¶ 98. However, the Complaint is devoid of any factual allegations that the Plaintiff did in fact sustain these damages. Accordingly, Plaintiff's damage allegations constitute "threadbare recitals of the elements" and do not suffice. *See Iqbal,* 556 U.S. at 678.

iii. <u>Plaintiff fails to state an unjust enrichment claim</u>

The elements for an unjust enrichment claim are "(1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit." *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 577 (Iowa 2019).

The Iowa Supreme Court determined "that the remedy of unjust enrichment or quantum meruit is based upon the concept of implied contract, and that in this jurisdiction the law will not imply a contract where there is an express contract." *Chariton Feed & Grain, Inc. v. Harder*, 369

N.W.2d 777, 791 (Iowa 1985). This means a plaintiff's recovery under an unjust enrichment cause of action is barred where an express contract covering the subject at issue exists. *See Legg v. W. Bank*, 873 N.W.2d 763, 772 (Iowa 2016) ("Because the issue of sequencing is expressly covered within the contracts between the [plaintiff] and [defendant], no claim for unjust enrichment is available."). Similarly, district courts across the Eighth Circuit have determined that existence of an express contract between the parties precludes recovery under the theories of quasi-contract, unjust enrichment, or quantum meruit. *See Marty H. Segelbaum, Inc. v. MW Cap., LLC*, 673 F. Supp. 2d 875, 879 (D. Minn. 2009); *C&C Int'l Trading Co. v. Buckhead Meat Co.*, 527 F. Supp. 3d 1016, 1027 (E.D. Ark. 2021).

Here, Intoxalock does not dispute the existence of an express contract; rather, it disputes Plaintiff's allegations that a breach occurred. In support of the breach of contract claim, Plaintiff alleges that Intoxalock promised to provide a "fully functioning product and adequate security processes and procedures, in exchange for payment." Comp. ¶ 95. In nearly identical fashion, Plaintiff anchors the unjust enrichment claim on allegations that "Defendant failed to adequately maintain proper security processes and procedures to prevent functionality disruptions of its product." *Id.* ¶ 103. Because Plaintiff's unjust enrichment claim covers the exact same ground as the breach of contract claim – arising from the same payments, the same security obligations, and the same services – it is barred as a matter of law.

**C. Rule 42(a) – Consolidation of Actions**

The Plaintiff's Complaint is pre-dated by several lawsuits which were previously consolidated under an amended consolidated class action complaint filed on June 15, 2026. The name of this ongoing litigation is *Praznik, et al. v. Consumer Safety Technology, LLC D/B/A Intoxalock,* Case No. 4:26-cv-00130-SMR-HCA ("*Praznik Litigation*"). Like the instant litigation, the plaintiffs in the *Praznik Litigation* allege claims against Intoxalock arising from the

Incident. Pursuant to a Court Order issued on July 30, 2026, the *Praznik Litigation* is currently stayed until February 1, 2027.

After the instant litigation was filed, Intoxalock's counsel conferred with Plaintiff's counsel and asked if they would consent to consolidating their lawsuit along with the ongoing *Praznik Litigation. See* Declaration of Edgar F. Navarrete ("Navarrete Decl.") ¶ 4. Plaintiff's counsel declined to consent to consolidation. *Id.* ¶ 5. Accordingly, if the instance litigation is not dismissed, Intoxalock seeks to consolidate this litigation with the *Praznik Litigation*. Consolidation of these two matters is appropriate here. The present actions involve a multitude of common questions of both law and fact that go to the very heart of the disputes at issue in both actions. These common questions of law and fact include, but are by no means limited to: (1) the cause of the Incident; (2) the alleged loss of use experienced by Intoxalock's customers as a result of the Incident; (3) the impact, if any, the Incident had on Intoxalock's customers' personal information; (4) the type of data elements affected by the Incident; and (5) the reasonable data security measures implemented by Intoxalock at the time of the Incident.

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, a district court may consolidate separate actions when those "actions involv[e] a common question of law or fact." Fed. R. Civ. P. 42(a); *Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994) ("The threshold issue is whether the two proceedings involve a common party *and* common issues of fact or law."); *see also Frazier y. Garrison I.S.D.,* 980 F.2d 1514, 1531 (5th Cir. 1993) ("[A] trial court may consolidate multiple actions if the actions involve common questions of law or fact"). The district court has broad discretion to consolidate actions that satisfy the Rule 42(a) requirement when the circumstances are such that consolidation would serve the interests of justice. *See Eidschun v. Pierce,* 335 F. Supp. 603, 607 (S.D. Iowa 1971) (cases related to same operative facts support decision to consolidate separate matters).

Consolidation is appropriate when the savings of time and effort that result from consolidation outweigh the inconvenience, delay and expense that it might cause to litigate the matters separately. *See E.E.O.C. v. HBE Corp.,* 135 F.3d 543, 550 (8th Cir. 1998) ("All claims and issues sharing common aspects of law or fact may be consolidated to avoid unnecessary cost or delay."); *see also E.E.O.C. v. Von Maur, Inc.*, 237 F.R.D. 195, 197 (S.D. Iowa 2006) ("Consolidation has historically been "a matter of convenience and economy in administration.") (internal citations omitted). Furthermore, the potential of inconsistent adjudications if the matters remain unconsolidated weighs heavily in favor of consolidation. *See Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993); *Malcolm v. Nat'l Gypsum Co.,* 995 F.2d 346, 350 (2d Cir. 1993).

Recently, in a matter similar to the one at issue, the District of Nebraska granted defendant's motion to consolidated in a data breach class action matter wherein a plaintiff's later-filed case was consolidated with an ongoing consolidated matter. *See In re Sav-Rx Data Breach Litig.*, No. 8:24CV204, 2025 WL 1237554, at *3 (D. Neb. Apr. 29, 2025). The District Court determined that the matters involved common questions of law and fact which would likely warrant similar discovery, motions and arguments such that consolidation would "avoid duplicative parallel activities, save time, avoid the risk of inconsistent rulings, and be more cost-effective." *Id.* Accordingly, given the scope of expected discovery and expected legal arguments in both suits, Intoxalock contends there is a need to have a unified and coordinated approach in this litigation. Rule 42(a) of the Federal Rules of Civil Procedure was designed to facilitate an efficient resolution of claims such as these; therefore, consolidation is appropriate in this matter.

The court should exercise its discretion to consolidate these actions in the interests of both judicial economy and justice. *See Miller v. Lauridsen Foods, Inc.,* 525 N.W.2d 417, 419-420 (Iowa 1994) (purpose of consolidation is to promote judicial economy and efficiency).

Consolidation will promote efficiency and conserve resources without sacrificing fairness. The two actions involve common questions of law and/or fact and therefore satisfy Rule 42(a)'s consolidation requirement. Consolidation will not cause the trial of one action to be delayed while discovery is completed in another; rather, consolidation will ensure a global discovery process and an efficient resolution of motions, hearings, discovery, and if necessary, trial.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Alternatively, Defendant's Motion to Consolidate should be granted pursuant to Federal Rule of Civil Procedure 42(a), and Plaintiff's Complaint should be consolidated with the ongoing consolidated lawsuit. Finally, Intoxalock respectfully requests oral argument on its Motion to Dismiss to address the myriad legal issues underlying the motion and to permit it to address any questions related to its alternative request for consolidation of this case with *Praznik*.

Dated: October 26, 2026

/s/ William J. Miller

William J. Miller (AT0005414)
DORSEY & WHITNEY LLP
801 Grand Avenue, Suite 4100
Des Moines, IA 50309
Tel: (515) 283-1000
Fax: (515) 864-0330
E-mail: miller.william@dorsey.com

Dennis N. Lueck, Jr. (*pro hac vice* forthcoming)
Edgar F. Navarrete (*pro hac vice* forthcoming)
MULLEN COUGHLIN LLC
3065 Center Green Drive, 2nd floor
Boulder, CO 80301
Tel: (267) 930-4679
E-mail: dlueck@mullen.law
enavarrete@mullen.law

***Attorneys for Defendant*, Consumer Safety Technology, LLC d/b/a Intoxalock**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 26, 2026 the foregoing instrument was served upon all parties to the above case and/or to each of the attorneys of record herein at their respective addresses disclosed on the pleadings:

By: Electronic Filing and/or
____ U.S. Mail _____ FAX
____ Hand Delivered _____ Overnight Courier
____ E-mail _____ Other ___________

/s/ William J. Miller